AO 106 (Rev. 01/09) Application for a Search Warrant

# United States District Court

### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*
**Subject Device 1** is a SAMSUNG Model Galaxy Note, M3C18A7 H engraved near SD holder, white backing, battery S/N YS1F7293S/2-B; **Subject Device 2** is a Samsung SM-B311V, black in color, MEID A0000048D09DAE, Battery S/N AA1G6150S/4-B ; **Subject Device 3** is a ZTE model Z981, black in color, IMEI 863461030223713, S/N 329766795764; **Subject Device 4** is a LG Cricket, black in color, IMEI 357630071592888, S/N 607CYPY159288 Battery P/N EAC63118201 LLL



Case No. 18-M- 3

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
**Subject Device 1** is a SAMSUNG Model Galaxy Note, M3C18A7 H engraved near SD holder, white backing, battery S/N YS1F7293S/2-B; **Subject Device 2** is a Samsung SM-B311V, black in color, MEID A0000048D09DAE, Battery S/N AA1G6150S/4-B ; **Subject Device 3** is a ZTE model Z981, black in color, IMEI 863461030223713, S/N 329766795764; **Subject Device 4** is a LG Cricket, black in color, IMEI 357630071592888, S/N 607CYPY159288 Battery P/N EAC63118201 LLL

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

### See Attachment A.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 21 U.S.C. §§ 841, 843 and 846.

The application is based on these facts:
- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

MICHAEL A. STEMPKI
SPECIAL AGENT
BUREAU OF INDIAN AFFAIRS
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  February 1, 2018

*Judge's signature*

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

City and state:  Buffalo, New York

## ATTACHMENT A

SCHEDULE OF ITEMS TO BE SEARCHED FOR AND SEIZED

Items comprising evidence of, or property designed for use, intended for use, or used in committing violations of Title 21, United States Code, Sections 841(a)(1), 843(b), 844(a) and 846.

a)   Records of telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, social media addresses, addresses, telephone numbers and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephone;

b)   Text messages, emails, instant messages contained in the cellular telephones related to drug trafficking and drug trafficking associates; and

c)   Records regarding the ownership and/or possession of the searched items.

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A
## SEARCH WARRANT

STATE OF NEW YORK )
COUNTY OF ERIE ) SS:
CITY OF BUFFALO )

**MICHAEL A. STEMPKI**, Special Agent with the Bureau of Indian Affairs ("BIA"),

United States Department of Interior, having been duly sworn, states as follows:

## INTRODUCTION

1.      I am a Special Agent (SA) with the United States Department of Interior

Bureau of Indian Affairs Office of Justice Services Division of Drug Enforcement.

Furthermore (BIA), I am a Task Force Officer (TFO) with the Drug Enforcement

Administration (DEA). As such, I am an "investigative or law enforcement officer of the

United States" within the meaning of Title 18, United States Code, Section 2510(7), that is,

an officer of the United States empowered by law to conduct investigations of and to make

arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2.      I have been a Special Agent of the BIA and a TFO of the DEA since December

2009. I graduated from the Federal Law Enforcement Criminal Investigator Training

Program in 2010. In the past 8 years I have been responsible for the investigation and

prosecution of numerous cases involving large scale marijuana, cocaine, and crack cocaine

distribution organizations. I have also assisted in numerous investigations that involved the

monitoring and recording of court authorized Title III interceptions. In addition, I have had

the opportunity to work with several other DEA special agents and other law enforcement agents and officers of varying experience levels, who have also investigated drug trafficking networks, with regard to the manner in which controlled substances are obtained, diluted, packaged, distributed, sold and used within the framework of drug trafficking in the Western District of New York.  As a result of my experience, I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used in the framework of drug trafficking in the Western District of New York and how drug traffickers utilize wire communications to facilitate their illegal activities.  My investigative experience detailed herein, and the experience of other law enforcement agents who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein.

3.      I have personally participated in the drug-trafficking investigation set forth below.  I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other agents of the DEA and other law enforcement officials, from DEA discussions with witnesses involved in the investigation, and from my review of records and reports relating to the investigation.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by a DEA agent/Task Force Officer, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed.  Such statements are among statements made by others and are stated in substance and in part unless otherwise indicated.  I submit this affidavit in support of an application for a federal search warrant for four portable cellular telephone devices, their SIM cards, and their component parts: (1) SAMSUNG Model Galaxy Note, M3C18A7 H engraved near SD holder, white backing, battery S/N

2

YS1F7293S/2-B **(Subject Phone 1)**; and (2) Samsung SM-B311V, black in color, MEID A0000048D09DAE, Battery S/N AA1G6150S/4-B **(Subject phone 2)**; and (3) ZTE model Z981, black in color, IMEI 863461030223713, S/N 329766795764 **(Subject phone 3)**; and LG Cricket, black in color, IMEI 357630071592888, S/N 607CYPY159288 Battery P/N EAC63118201 LLL **(Subject phone 4)**. On May 24, 2017, **Subject Phone 1 and 2** were seized from **Travel JEFFERSON** following his arrest. **Subject Phone 3** was seized from 269 Jewett Avenue, Buffalo, NY following the execution of a federal search warrant described in greater detail below. **Subject Phone 4** was seized from **Derrick PITTS** following his arrest. These four cellular phones (collectively, the "Subject Property") are presently in DEA custody at 535 Washington Street, Buffalo, New York 14203.

4.      Because this affidavit is being submitted for the limited purpose of securing search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the Subject Property described above is evidence of, was used in committing, and/or contains evidence/fruits/instrumentalities of violations of: 21 U.S.C. § 841 (possession with the intent to distribute, and to distribute, crack cocaine, a Schedule I controlled substance, and cocaine base, a Schedule II controlled substance); 21 U.S.C. § 843(b) (use of a communication facility in furtherance of a controlled substance felony); 21 U.S.C. § 846 (conspiracy to possess with the intent to distribute, and to distribute, cocaine) (hereinafter, "**Enumerated Offenses**").

5.      On May 25, 2017, your affiant signed a criminal complaint in front of U.S. Magistrate Kenneth Schroeder, Jr in the Western District of New York for probable cause to

believe that **Shawn CUNNINGHAM**, **Derrick PITTS**, and **Travel JEFFERSON** conspired to possess with the intent to distribute, and did distribute 28 grams or more of cocaine base, and cocaine, in violation of Title 21, United States Code, Sections 841(a), 841(b)(1)(B), and 841(b)(1)(C), all in violation of Title 21, United States Code, Section 846

## I.   BACKGROUND OF INVESTIGATION

6.   Since October of 2016, the Investigative Team has been conducting an investigation of **Shawn CUNNINGHAM's** drug trafficking activities.   Initially, the investigation revealed that **CUNNINGHAM** distributed quantities of cocaine and crack cocaine in the City of Buffalo, NEW York area.   Eventually, as further detailed below, **Derrick PITTS** was eventually identified as the Source of Supply for **CUNNINGHAM**, and **Travel JEFFERSON** a participant in the conspiracy.

7.   During the course of the investigation, the investigative team recruited an confidential sources (hereinafter referred to as CS) who provided information regarding the cocaine trafficking activities **CUNNINGHAM**. The information provided by CS has proven to be both reliable and credible and corroborated by several controlled purchases of an substances determined to contain cocaine from **CUNNINGHAM** as described in greater detail below.

8.   According to the CS, he/she has known **CUNNINGHAM** for approximately four months.[1] According to CS, **CUNNINGHAM** sells various quantities of cocaine.   The

---

[1] During this time, the CS knew **CUNNINGHAM** as a drug supplier, but did not actually know his name.

CS stated that he/she has observed **CUNNINGHAM** on numerous occasions selling quantities of cocaine and has observed **CUNNINGHAM** in possession of large quantities of cocaine at 269 Jewett Ave, Buffalo, New York.   The CS indicated that the cocaine transactions between **CUNNINGHAM** and others that the CS observed occurred at **CUNNINGHAM's** residence located at 269 Jewett Ave, Buffalo, New York (hereinafter **Target Premises 1)**, and were set up by phone calls or text messages on **CUNNINGHAM's** cellular telephone.   The CS informs that **CUNNINGHAM's** cellular telephone number is (716) 289-9716.

## II.   **PROBABLE CAUSE**

### A.   **Controlled Purchase #1**

9.     On April 17, 2017, TFO's your affiant and other law enforcement met with a confidential source (CS), at the DEA Buffalo Resident Office (BRO) in preparation of a controlled purchase of approximately two (2) ounces of cocaine base (crack cocaine) from **CUNNINGHAM** for $2,700.  On that same date, at approximately 3:00 p.m., the CS placed a recorded call to **CUNNINGHAM**, at number **716-289-9716**, to arrange the sale of the cocaine. **CUNNINGHAM** advised the CS, in sum and substance, that his source of supply is about to pull up on him.

10.     At approximately 3:17 p.m., Agents of the DEA and Customs and Border Protection Air and Marine Operations (CBPAMO) observed Derrick **PITTS** pull up in a red sport utility vehicle near **Target Premises 1**. Agents reported the plate number on the vehicle as HMG2455. Also at this time Agents observed **PITTS** in a dark sweat suit type outfit exited the vehicle and walked towards **Target Premises 1**. A short time later **PITTS** was observed

standing in front of the **Target Premises 1,** and then walked back to his vehicle and leave. CBPAMO followed the vehicle to the rear of an apartment complex located at 1945 Hertel Avenue, Buffalo, NY 14214 (hereinafter **Target Premises 2)**. Agents then observed **PITTS** as he entered **Target Premises 2**.

11.     At approximately 3:30 p.m., CBPAMO observed **PITTS** re-enter his vehicle and drive away.  CBPAMO followed **PITTS** to Wakefield Avenue where an unknown subject is observed making contact with **PITTS** through the passenger side window. Three other unknown males are also observed in the area of **PITTS**.  At approximately 3:37 p.m., **PITTS** leaves the area and arrives back near **Target Premises 1**.  **PITTS** is then observed exiting his vehicle and walking to the back yard area of 148 Wakefield and meet with 5 unknown subjects.

12.     At approximately 3:49 p.m., the CS arrived at **Target Premises 1**, and entered the residence.  At approximately 3:55 p.m., CBPAMO observes **PITTS** leaving the group of people on Wakefield and walk to the area of **Target Premises 1. CUNNINGHAM** then left **Target Premises 1** and re-entered a short time later.   Once inside **Target Premises 1**, **CUNNINGHAM** then sold the CS two (2) ounces of cocaine base (crack cocaine)  for $2,700.

13.     The CS then exited the residence and met with law enforcement at the pre-determined location.  After the CS left, CBPAMO continued surveillance on **PITTS**.  At approximately 3:59 p.m., **PITTS** was observed by CBPAMO walking to his vehicle. **PITTS** temporarily opens the door and then walks to **Target Premises 1. CUNNINGHAM** is then

6

observed coming out of his residence and meeting with **PITTS**. **PITTS** was then observed leaving the area.

14.    Once at the DEA BRO, The CS was de-briefed.  According to the CS, he met with **CUNNINGHAM** inside **CUNNINGHAM'S** residence, and **CUNNINGHAM** then went outside to get the cocaine from **CUNNINGHAM's** source. The CS also gave the cocaine to the agents, who conducted a field test on the cocaine.  This field test indicated positive for the presence of cocaine. .

**B.    Controlled Buy #2**

15.    On May 16, 2017, your affiant and other law enforcement again met with the CS.  This meeting was in preparation of a controlled purchase of another two (2) ounces of cocaine base (crack cocaine) from **CUNNINGHAM** for $2,750.00.   On this date, at approximately 2:50 p.m., your affiant searched the CS with a negative result of contraband. The CS was then given the funds for the sale, provided with a Kel Transmitter, and fitted the CS with audio/video recorder to capture the events of this operation.

16.    At approximately 3:07 p.m., the CS placed a consensually recorded call to **CUNNINGHAM** at target telephone number **716-289-9716** to arrange the sale of the cocaine. During this conversation, the CS and **CUNNINGHAM** agreed to meet at Target Premises 1 for the sale.  At approximately 3:38 p.m., Agents left the BRO and escorted a CS to the area of Target Premises 1.

17.     At approximately 3:50 p.m. the CS was brought to the area of Target Premises **1**. The CS exited the vehicle and walked up on to the porch as observed by Agents. At this time, the CS engaged in conversation with two unknown black males that were on the porch of **Target Premises 1**. The CS called **CUNNINGHAM** since he was not present. **CUNNINGHAM** told the CS that, "Be there in a minute I had to make a Run".

18.     At approximately 4:05 p.m. Agents observe a white Cadillac bearing NYS registration HBL4580 operated by **CUNNINGHAM** pull up and park next to **Target Premises 1**. **CUNNINGHAM** exited said vehicle and met with the CS. At this time the CS and **CUNNINGHAM** entered **Target Premises 1** and engaged in conversation relating to the purchase of two ounces of crack cocaine.

19.     At approximately 4:31 p.m., Agents reported that a red Chevy Trailblazer bearing NYS registration HG2455 being operated by **PITTS** arrived at **Target Premises 2**.

20.     A short time later, **PITTS** was observed leaving **Target Premises 2** in the red Trailblazer. **PITTS** was observed driving to the area of **Target Premises 1**, and arriving at approximately 4:31 p.m.

21.     Once PITTS arrived, agents observed **CUNNINGHAM** exit **Target Premises 1** and walked to the passenger side of **PITTS's** vehicle, and reached into the car. **CUNNINGHAM** then walked back to **Target Premises 1** and entered the residence. **CUNNINGHAM** then sold two (2) ounces of cocaine base (crack cocaine) to the CS, in

exchange of $2,750.00.  At approximately 4:40 p.m., **CUNNINGHAM** exited the residence and walked to the trailblazer, where **PITTS** remained.  **PITTS** then pulled off and left the area.

22.     At approximately 4:43 p.m. the CS exited **Target Premises 1** and met with law enforcement, and was driven directly to the DEA BRO.  The CS then turned over the cocaine to agents.  The agents conducted a field test on the crack cocaine, which indicated positive for the presence of cocaine.

## C.     Controlled Purchase #3

23.     On May 24, 2017, your affiant and other law enforcement again met with the CS.  This meeting was in preparation of a controlled purchase of another two (2) ounces of cocaine base (crack cocaine) from **CUNNINGHAM** for $2,600.00.

24.     At approximately 1:18 p.m., the CS placed a consensually recorded call to **CUNNINGHAM** at **716-289-9716** to arrange the sale of cocaine. During this conversation, the CS and **CUNNINGHAM** agreed to meet **Target Premises 1** for the purpose of the CS purchasing cocaine.

25.     At approximately 1:23 p.m., the CS was searched by law enforcement with negative results for of contraband. The CS was then provided with a Kel Transmitter and fitted with an audio/video recorder.  The CS was then given $2,750.00 FBI official advance funds (OAF) for the purchase.

26.     At approximately 1:29 p.m., the CS was brought to the area of **Target Premises 1.** At approximately 1:39 p.m., the CS was observed speaking with **CUNNINGHAM** on the porch of **Target Premises** 1, and then entering. **CUNNINGHAM** was wearing a dark T-shirt, brown sweat pants and sandals. Law enforcement, who was able to monitor the conversations through the Kel transmitter, heard the CS and **CUNNINGHAM** engage in conversation relating to the purchase of two ounces of cocaine. It was the intention of the CS and the DEA to purchase two ounces of crack cocaine, however **CUNNINGHAM** advised the CS that he did not have the crack cocaine available but could sell powder.

27.     At 2:19 surveillance observed a red Cadillac bearing NYS registration HAX7020, pull up in front of **Target Premises 1.** It was later determined that this vehicle was being driven by **JEFFERSON.** Surveillance then observed **CUNNINGHAM** exit **Target Premises 1** and walk to the passenger side of **JEFFERSON's** vehicle. **CUNNINGHAM** then reached into the vehicle, and then walk back into **Target Premises 1.** Inside the **Target Premises 1, CUNNINGHAM** then sold the two ounces of powder cocaine to the CS. The CS gave **CUNNINGHAM** $2,600.00 of the $2,750.00 OAF .

28.     After the sale, **JEFFERSON** drove away from **Target Premises 1**, and was pulled over by law enforcement. His identity was confirmed as **TRAVEL JEFFERSON.** Approximately $2,400.00 of the OAF funds that the CS gave to **CUNNINGHAM** for the sale of cocaine was found on **JEFFERSON's** person. In addition, agents seized **Subject Telephone 1 and 2** from **JEFFERSON.** At the same time, DEA executed a previously

obtained search warrant at **Target Premises 1**.[2]   During the execution of this warrant, **CUNNINGHAM** was arrested.  **CUNNINGHAM** was found to be in possession of $200.00 of the $2,600.00 OAF funds he received from the CS for the sale of cocaine. At this time, the identity of **CUNNINGHAM** was verified.[3]

29.   During the search of **Target Premises 1** several items of drug paraphernalia, including packaging, and a scale with suspected cocaine residue were found. In addition, agents seized **Subject Telephone 3**.

**D.   Arrest of PITTS and Search of Target Premises 2**

30.   On May 24, 2017, at approximately 2:35 p.m., agents of the DEA Buffalo Resident Office (BRO) arrested **PITTS** as he was leaving **Target Premises 2**.  A previously obtained search warrant was then executed at **Target Premises 2**.

31.   Found during the course of the search were:

-a plastic bag containing 252 gross grams of suspected cocaine inside the headboard of a bed in the bedroom,
-two (2) plastic baggies containing 116 gross grams of suspected crack cocaine in the far left kitchen drawer,
-two (2) digital scales with suspected cocaine residue on the top shelf of the far left cupboard,
-An undetermined amount of U.S. currency was recovered in a bedroom,

---

[2] On May 23, 2017, a search warrant was obtained from United States Magistrate Judge H. Kenneth Schroeder, Jr. authorizing the search of **Target Premises 1** and **Target Premises 2**.
[3] Initially, it was believed that **CUNNINGHAM** was actually named Hakim Raid, however, your affiant, and DEA has since determined that the individual referenced in this affidavit, and a prior affidavit in support of a search warrant was in fact **CUNNINGHAM.** In addition, the CS confirmed that **CUNNINGHAM** is the same individual who he purchased the crack cocaine, and powder cocaine from on the occasions referenced in this affidavit.

-A black colored LG Cricket cell phone **(Subject Phone 4)** was recovered from **PITTS**
-A National Grid paper bill was recovered inside the residence.

### III.   SUMMARY OF <u>RELEVANT</u> TECHNOLOGY

32.   A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals.  These telephones send signals through networks of transmitter/receivers called "cells", enabling communication with other cellular telephones or traditional "land line" telephones.  A cellular telephone usually includes a "call log", which records the telephone number, date, and time of calls made to and from the phone.

33.   In addition to enabling voice communications, cellular telephones offer a broad range of capabilities.  These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.  Based on your Affiant's training and experience, and the information learned throughout this investigation, it is known that persons associated with drug trafficking organizations in general, and **CUNNINGHAM** specifically, utilizes a cellular telephone to communicate with others about the possession, transportation, and distribution of controlled substances, including cocaine.

## IV.   SEEKING AUTHORIZATION TO SEARCH AND SEIZE

34.    Accordingly, the application seeks authorization to search for and seize all:

a.    Records of telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones;

b.    Text messages, emails, and instant messages contained in the cellular telephones related to drug trafficking and drug trafficking associates ; and

c.    Records regarding the ownership and/or possession of the searched items.

35.    Based on my training, my experience, my participation in other narcotics investigations, my participation in this investigation, and my discussions with other experienced law enforcement personnel, I have learned that significant narcotics traffickers such as dealers in large quantities of cocaine/ cocaine base and other controlled substances frequently maintain, in portable mobile communication and storage devices, addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers, and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones;

36.    Based on your Affiant's experience, it is believed the Subject Property is evidence of and/or contains evidence of the Enumerated Offenses, which have been committed.  It is known that **CUNNINGHAM** uses a cellular device to coordinate the sales of cocaine/crack cocaine.  It is further believed that the coordination of these sales with both **PITTS**, and **JEFFERSON** is conducted through the use of cellular telephones by all involved.

13

As such, I believe that the Subject Property described above (ie. **Subject Phone 1, Subject Phone 2, Subject Phone 3,** and **Subject Phone 4**) contain evidence of the Enumerated Offenses, which have been committed by **PITTS, CUNNINGHAM, JEFFERSON** and others.

37.     Based on your Affiant's knowledge and training and the experience of other Agents with whom I have discussed this investigation, I know that in order to completely and accurately retrieve data maintained in cellular telephones hardware or software, to ensure the accuracy and completeness of such data, and to prevent the loss of the data either from accidental or intentional destruction, it is often necessary that the cellular telephones, related instructions in the form of manuals and notes, as well as the software utilized to operate such a device, be seized and subsequently processed by a qualified specialist in a laboratory setting.

## V.     <u>ANALYSIS</u> OF ELECTRONIC DATA

38.     The search warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure.

39.     Searching the cellular telephones for the evidence described above may require a range of data analysis techniques.  In some cases, it is possible for Agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, Agents may be able to execute a "keyword" search that searches through the files stored in a cellular telephone for special words that are likely to appear only in the materials covered in the warrant by looking for particular directory or file names.  In other

cases, however, such techniques may not yield the evidence described in the warrant. Suspected criminals have the ability to mislabel or hide information and directories; encode communications to avoid using key words, attempt to delete files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require Agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, your Affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described above.

WHEREFORE, based upon the foregoing, your Affiant submits that there is probable cause to believe that the previously described cellular telephones are evidence of, and/or contain evidence of the Enumerated Offenses, and/or evidence of other co-conspirators involved in the Enumerated Offenses, which have been committed.

MICHEL A. STEMPKI
Special Agent
Bureau of Indian Affairs and
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me

this _1st_ day of February, 2018.

HON. H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

15